UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PETER DAVID YOUNG,

                             Plaintiff,

                                                      Case #11-CV-6007-FPG

v.

                                                      DECISION AND ORDER

DOCTOR CANFIELD,
MALE NURSE MR. MCNETT, and
SOUTHPORT CORRECTIONAL FACILITY
H.I.P.A. HOSPITAL,

                             Defendants.

Plaintiff Peter David Young has brought this action under Title 42, United States Code, Section 1983, alleging that while he was incarcerated he was given medical treatment that violated his religious beliefs, and that he was subjected to excessive force.  Defendants have moved to dismiss the Amended Complaint, and because I find that Plaintiff's Complaint does not plausibly entitle him to relief, the Motion is granted and the case is dismissed.

## Background

Plainitff's *pro se* Amended Complaint, filed December 14, 2011, is the operative pleading in this case.  Dkt. #11.  It lists three Defendants: Doctor Canfield of DOCCS' Southport Correctional Facility, Nurse McNett of DOCCS' Southport Correctional Facility, and also lists Southport Correctional Facility H.I.P.A. Hospital itself as a Defendant.  *Id.*

Less than 10 days after the Amended Complaint was filed, the Court appointed Karen Bailey-Turner as *pro bono* counsel to represent Mr. Young.  Ms. Bailey-Turner had previously been appointed to represent Mr. Young in another case he had pending against DOCCS in federal court.  Ms. Bailey-Turner volunteered to take on this second case, and I appreciate and commend her willingness to assist and represent Mr. Young in this case.

The allegations of the Amended Complaint center around November 24, 2010, when, according to Plaintiff, "Dr. Canfield and Nurse McNett of Southport Correctional Facility HIPA Hospital…will be using excessive force to pin me down with the help of 4 extracting team members." Dkt. #11. Plaintiff further alleges that "with excessive force they put me into a chair and took three tubes of blood, pulse, temperature, blood pressure, weight and other medical treatment" and that "its [sic] against my religious beliefs to have any medical treatment." *Id.*

Plaintiff further alleges that the Doctor and Nurse "violated Judge Whalen Court Order dated Nov 8, 2010 Index No #SF 2010-902521, State of New York, Supreme Court, County of Erie." *Id.* The only other injuries mentioned in the Amended Complaint are at the very end of the document where Plaintiff states that "[t]he extracting team using excessive force and physical abuse also assaulted me causing me bodily harm. Black and Blue marks on my body, twisted my arm almost broke it. Doing damage to my neck, back, ribs and legs that a month later I'm still hurting and in pain." *Id.*

While written as one claim, I interpret the Amended Complaint to actually allege two separate claims: First, a violation of Plaintiff's First Amendment rights to freedom of religion regarding medical treatment, and second, an Eighth Amendment Excessive Force claim.

Defendants have moved to dismiss the Amended Complaint on three main grounds. First, that Southport Correctional Facility is immune from suit and therefore is not a proper Defendant; second, that the religious freedom claims are barred under the so-called *Rooker-Feldman* doctrine; and third, that the named Defendants are immune from suit. The Plaintiff opposes the motion, Dkt. #30, and on June 25, 2014, I heard oral argument from the parties.

## Discussion

I.    Motion to Dismiss Standard

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint is plausible when a plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, a court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

When a Plaintiff is *pro se,* his pleadings are ordinarily interpreted liberally "to raise the strongest arguments that they suggest," *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009), and are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,*

551 U.S. 89, 94 (2007) (internal quotation marks omitted).   While the Complaint and Amended Complaint were filed in this case *pro se*, Plaintiff is currently represented by counsel.   It is an open question in the Circuit whether the Plaintiff is therefore entitled to the liberal construction afforded to *pro se* litigants.   Under the facts of this case, I find that Plaintiff is not entitled to have his Complaint read as if he were proceeding *pro se*.   There is no doubt that Plaintiff drafted the Amended Complaint himself, but the decisive factor in my opinion is that at no time during this litigation did Plaintiff's counsel seek to amend the Amended Complaint, and therefore, effectively adopted it.   Magistrate Judge Feldman's scheduling order in this case explicitly ordered that "all motions to join other parties and to amend the pleadings shall be filed on or before May 3, 2013." Dkt. #23.   In other words, Plaintiff and his counsel had from December 23, 2011 (when counsel was appointed) until May 3, 2013 to amend the Amended Complaint, but chose not to.   In addition, at no time subsequent to May 3, 2013 has Plaintiff sought to amend the Amended Complaint.

If the time period between counsel's appointment and the filing of the Motion to Dismiss were smaller, the result would likely be different.   But here, where sufficient time to amend the operative pleading has elapsed, I find nothing unfair about viewing the Amended Complaint under the normal standards, and not the liberal rules that apply to *pro se* cases.   *See, e.g., Muhammad v. Wal-Mart Stores East, L.P.*, No. 10-CV-6074, 2012 WL 3201668, at *5 n.6 (W.D.N.Y. Aug. 2, 2012) ("[O]nce [plaintiff] retained an attorney, his original *pro se* status no longer entitled him to a liberal interpretation of his pleadings.   Although plaintiff initiated the complaint [] *pro se*, counsel could and should have [amended the Complaint if necessary]") (internal quotation omitted).   To hold otherwise would allow the Plaintiff to have it both ways, in that he would be inappropriately afforded the benefit of having his amend the Amended

Complaint construed liberally under the *pro se* standards, while at the same time, having the full assistance of counsel.

II.   <u>Southport Correctional Facility HIPA Hospital as Defendant</u>

Defendants have moved to dismiss institutional Defendant Southport Correctional Facility (named as Southport Correctional Facility HIPA[1] Hospital in the Amended Complaint) from the case, arguing that the facility itself is not a proper Defendant.

At oral argument on the motion, Plaintiff's counsel conceded that Southport Correctional Facility is not a proper defendant, and should be dismissed. I agree.

There are two possible statutes Plaintiff could use in attempting to bring this suit against Southport Correctional Facility. The first is the statute cited in his Amended Complaint − 42 U.S.C. §1983. Second, the Amended Complaint could potentially be brought under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), codified at 42 U.S.C. § 2000cc-1. Regardless of which statute the case is viewed under, the result is the same: Plaintiff cannot maintain this action against a state entity.

Southport Correctional is a facility within the New York State Department of Corrections and Community Supervision ("DOCCS"), which is an entity of New York State, and is therefore not subject to suit under 42 U.S.C. § 1983. It is well settled that the Eleventh Amendment bars federal court claims against states, absent their consent to such suit or an express statutory waiver of immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, (1989). "An official arm of the state," such as DOCCS and Southport, "enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). *See also Woods v. Rondout Valley Cent. School Dist. Bd. of*

---

[1] At oral argument, Plaintiff's counsel agreed that "HIPA" is an incorrect reference to the Health Insurance Portability and Accountability Act of 1996 (Pub.L. 104–191, 110 Stat. 1936, enacted August 21, 1996), commonly referred to as "HIPAA," and that Southport Correctional Facility is indeed the Defendant referred to in the Amended Complaint.

*Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state.") (internal quotation marks and citations omitted). Since New York State has not waived that immunity, the action cannot proceed under Section 1983 against Southport Correctional Facility.

Even if the cause of action was brought under RLUIPA instead of Section 1983, the result is the same. The Supreme Court has held that "that sovereign immunity forecloses the availability of money damages as a remedy against states and state actors in their official capacities under RLUIPA." *Sossamon v. Texas*, --- U.S. ---, 131 S.Ct. 1651, 1663 (2011). Even assuming that the Plaintiff was attempting to maintain the action against Southport in something other than its official capacity, the actions would still be barred. As the Second Circuit recently explained in *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) "RLUIPA does not provide a cause of action against state officials in their individual capacities."

As a result, the Plaintiff cannot maintain his claims against institutional Defendant Southport Correctional Facility, and it is dismissed from this action.


III.   The *Rooker-Feldman* Doctrine

The Defendants have also moved to dismiss the Amended Complaint under the so-called *Rooker-Feldman* doctrine, arguing that Plaintiff cannot challenge the underlying state court order in this forum. The Plaintiff's opposition centers around whether or not the state court order attached to the Motion is authentic, and whether or not the Defendants were actually authorized to take action under the state court order.

To the extent that Plaintiff is arguing that the state court order filed on the docket (as an attachment to the Motion to Dismiss) is not properly authenticated, or is not properly considered by the Court, I disagree.

Plaintiff referenced the state court order in his Amended Complaint, and specifically described it by the judge's name, the date, and the docket number. As such, the Court may consider the Order because Plaintiff incorporated it by reference in the Amended Complaint and relied on it in bringing this lawsuit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citations omitted).

Further, under Fed. R. Evid. 201 (b) the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, the document is a court order, filed publicly, and is therefore readily available to the public. As such, it qualifies under Rule 201 (b). *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (under Fed. R. Evid. 201(b), courts "may take judicial notice of pleadings in other lawsuits attached to the defendants' motion to dismiss ... as a matter of public record"); *Stubbs v. de Simone*, No. 04 Civ. 5755(RJH) (GWG), 2005 WL 2429913, at *5 (S.D.N.Y. Sept. 30, 2005) (relying on facts from court papers attached to defendants' motion to dismiss a Section 1983 action by prison inmate). As such, I take judicial notice of the fact that the order attached to the Motion to Dismiss is a correct copy of the order issued by Justice Whalen. In reviewing the order, I would note that it has the same judge's name, the same date, and the same docket number as the Plaintiff refers to in his Amended Complaint. Further, that order found that "Peter Young is on a hunger strike and is at risk of possible starvation, dehydration and death" and that "it is necessary for [DOCCS] to force-feed Peter Young in order to keep him alive." The order authorized DOCCS to force feed Young, to obtain his vital signs, conduct physical examinations and blood tests and to treat other associated medical problems, and further authorized the use of physical restraints to accomplish these tasks.

Having established that a valid court order permitted DOCCS to perform various medical treatments on Plaintiff, he cannot now complain about those acts in this forum.

Under the *Rooker-Feldman* doctrine, named after *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), federal district courts are precluded from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Underlying this doctrine "is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009); *see also Feldman*, 460 U.S. at 482 ("[r]eview of such judgments may be had *only* in [the Supreme Court].).

In order for the *Rooker-Feldman* doctrine to bar an action, the Second Circuit has explained that four requirements must be met. First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. And fourth, the state court judgment must have been rendered before the district court proceedings commenced. *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) *quoting Exxon Mobil Corp.*, 544 U.S. at 284 (alterations omitted).

In this case, there can be no dispute that Plaintiff lost in state court. DOCCS went to court to obtain an order to administer medication and treatment to Plaintiff because he was on a hunger strike, and because Plaintiff refused the prison officials' care and treatment. Plaintiff was represented by a Buffalo attorney at the hearing, and State Supreme Court Justice Gerald Whalen ruled against Plaintiff, and granted DOCCS' application. Second, Plaintiff's Amended

Complaint also makes clear that the federal action is about that order, and indeed, the Amended Complaint describes the exact particulars of the order – the docket number, the date, and the judge. The third factor is clearly satisfied, since the Plaintiff is seeking one thing: a ruling from this Court that would effectively overturn or nullify the decisions rendered by the state courts. Finally, since the state court order was issued on November 8, 2010, it predates this action, which was commenced by Plaintiff on January 6, 2011.

In Plaintiff's response, he argues that "Justice Whalen's orders were only authorized if Plaintiff was on a hunger strike or if the extracting team was in the process of inserting a nasogastric tube (per the order's requirements) at the time they executed the order. Defendants have not alleged either of these facts." Dkt. #30. This argument misses the mark. Since this is a Motion to Dismiss, it is not the Defendants' place to allege facts, rather, the Court judges the Amended Complaint based upon the facts alleged in Plaintiff's Amended Complaint.

In that regard, it is the Plaintiff who never alleged in his Amended Complaint facts to support a plausible claim that the Defendants violated the state court order. Nowhere in the Amended Complaint does Plaintiff allege "I was not on a hunger strike when they took my blood" or anything even close to that. Rather, the best he alleges in that regard is that "the Doctor and Nurse McNett…violated Judge Whalen Court Order Dated Nov 8, 2010." Dkt. #11. That conclusory allegation is simply insufficient – it is nothing more than a threadbare recital of a cause of action that is devoid of any factual support. Without alleging any specific facts, the Amended Complaint "pleads facts that are merely consistent with a defendant's liability" and it therefore "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

As all four of the *Hoblock* factors are satisfied, any challenge regarding the state court order is barred by the *Rooker-Feldman* doctrine, and deprives this Court of jurisdiction to

entertain the claim.  If the Plaintiff wished to challenge the state court order, his course of action would have been to seek review in the state court system, by appealing to the Appellate Division, Fourth Department, then the NY Court of Appeals, and finally to the United States Supreme Court.  He cannot use this Court as a forum to challenge that order, and as a result, the claim against Nurse McNett and Doctor Canfield for violating his religious freedom by subjecting him to medical treatment is dismissed.

As an alternative basis, Plaintiff argues in his responding papers that the Defendants knew he had a pending federal matter, and suggests that they may have "used force against Plaintiff in retaliation for his legal challenges against DOCCS."

First, this claim is not contained anywhere in the Amended Complaint.  The words "retaliate" or "retaliation" appear nowhere in the Amended Complaint.  The only possible sentence that counsel could be attempting to parlay into a retaliation claim is: "Dr. Canfield, Nurse McNett, and HIPA Hospital new [sic] I had a ongoing case in U.S. District Court Rochester NY Case #09-CV-6639CJS in front of Judge Siragusa." Dkt. 11.  That claim stops well short of even attempting to convey a retaliation claim under the standards previously discussed.  Further, in his Amended Complaint, Plaintiff describes his claims as "Religious Practice First Amendment, Assault Eight Amendment and Medical Care Against My Religion Eighth Amendment." *Id.*  While Plaintiff's own description of his claims is not determinative, it is certainly worth noting that nowhere in his claims – nor in the body of his Amended Complaint – does he ever refer to retaliation, and Plaintiff may not use a Motion Response to add new claims to his case.

Even if judged on the merits, Plaintiff's claim is still barred.  It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).  To state a retaliation claim under § 1983, "a

plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (internal quotation and citation omitted.)

Again, nowhere in the Amended Complaint does Plaintiff allege that Defendants' actions were taken because of, or in retaliation for, his pending lawsuit in federal court. Simply stating that the Defendants "knew" that he had a lawsuit is insufficient, as it fails to plead facts that would "nudge [his] claims across the line from the conceivable to the plausible." *Twombly*, 550 U.S. at 570.


IV.   Excessive Force Claim and Immunity

The final claim alleges that in carrying out the state court order, Doctor Canfield and Nurse McNett "with excessive force they put me into a chair and took three tubes of blood, pulse, temperature, blood pressure, weight and other medical treatment." Dkt. #11.

Defendants have moved to dismiss the Amended Complaint on the ground that they are entitled to immunity. Plaintiff argues that the Defendants have not provided factual affirmations to support the "nature of their employment and/or relationship with the State of New York." Dkt. #30.

Regardless of whether that statement is correct or not, the result is the same: the Plaintiff cannot maintain his Section 1983 claim for excessive force against these Defendants because if the Nurse and Doctor are state actors, then they are entitled to immunity. On the other hand, if they are not state actors, then no cause of action lies under Section 1983.

The Defendants pleaded qualified immunity in their Answer, and it is well settled that "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal

citations and quotation marks omitted).   "A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity." *Okin v. Village of Cornwall–On–Hudson Police Department*, 577 F.3d 415, 433 (2d Cir. 2009).

The standard for qualified immunity is also well known. "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).   As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation;" and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir. 2004) (citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

Quasi-judicial immunity protects officials who are performing official duties that are comparable to functions for which judges are immune. *Butz v. Economou*, 438 U.S. 478, 512 (1978).   As one court in this district has held, "Government officials carrying out a facially valid court order are entitled to immunity to suits for damages under § 1983." Fludd v. Fischer, No. 10-CV-6603-CJS, 2012 WL 3749652 (W.D.N.Y. Aug. 28, 2012), citing *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) ("Therefore, law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action.")   The New York State Court of Appeals has stated that this immunity extends to "other neutrally positioned government officials, regardless of title, who are delegated judicial or quasi-judicial functions [and who] should also not be shackled with the fear of civil retribution for their acts." *Mosher–Simons v. Cnty. of*

*Allegany*, 99 N.Y.2d 214, 219 (2002).  The reason for this immunity is well founded.  As one federal district Court explained:

> "Despite potential unfairness to plaintiffs, requiring prison officials to second-guess a court order when questions arise regarding its validity would place prison officials in a dilemma.  On the one hand, public officials could face section 1983 liability if an order is later found to be erroneous. On the other hand, Public officials ... who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their office."

*Todd v. Hatin*, No. 2:13–cv–05, 2013 WL 3990815 (D. Vt. Aug. 5, 2013).

Whether couched in terms of qualified immunity or quasi-judicial immunity, applying these standards, I find that Nurse McNett and Doctor Canfield are immune for their actions here if they are indeed state actors.   The simple fact is that a valid court order was issued that authorized these medical officials to take basic actions to protect the life of the Plaintiff while he was confined in a DOCCS facility.  As previously stated, the only force complained of by Plaintiff is that the Nurse and Doctor "put me into a chair and took three tubes of blood, pulse, temperature, blood pressure, weight and other medical treatment."   Dkt. #11.   There is no allegation that the Nurse or Doctor took extreme or shocking actions, or that they did anything other than what the state court order authorized.  There is no reason for the Defendants to have believed that carrying out the order would create any type of violation, and indeed, the Defendants could have subjected themselves to liability had they not complied with the order. As such, they are entitled to immunity for the acts they took to carry out the state court order.

On the other hand, if the Defendants were not state actors, they would not be acting under color of state law, and therefore would not be a proper party to a 1983 action.  In order to state a claim under Section 1983, the Plaintiff must plausibly allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."

*Flynn v. James*, 513 F. App'x 37, 39 (2d Cir. 2013) quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d

Cir. 1999).   Under Section 1983, "[t]he traditional definition of acting under color of state law requires that the defendants ... have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"   *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).   While the facts alleged here plainly allege that the Nurse and Doctor were indeed acting under color of state law – and as previously discussed, are therefore immune from suit under the facts of this case – to the extent that Plaintiff now argues that they were not acting under color of state law, that would preclude his action under Section 1983.   Under either situation, the result is the same, and the claims against Nurse McNett and Doctor Canfield must be dismissed.

The only other allegations of excessive force in the Amended Complaint relate to individuals who are *not* named defendants in this case.   Specifically, the end of the Complaint alleges that "*The extracting team* using excessive force and physical abuse also assaulted me causing me bodily harm.   Black and Blue marks on my body, twisted my arm almost broke it. Doing damage to my neck, back, ribs and legs that a month later I'm still hurting and in pain." Dkt. #11.  (Emphasis added.)   "The extracting team" is not named as a defendant in this action, nor are the members of the extracting team identified anywhere in the Amended Complaint nor in the caption.   In addition, Plaintiff has had the benefit of time – since the Amended Complaint was filed over two years ago – and discovery has long since closed.   However, despite being given that time, Plaintiff has not sought to file a second amended complaint to include the extracting team members.   Simply put, what the extracting team did or did not do is not before me in this action.

Further, Plaintiff was notified of the fact that the extracting team members were not named by him as defendants in this case as part of the Court's March 7, 2012 Decision and Order.  Dkt. #13, n.2.  ("[T]he Court notes that plaintiff states that '4 extracting team members'

14

used excessive force, but he does not name them as defendants, and the Court does not direct service on these individuals") Even despite that notification over two years ago, Plaintiff took no steps to add the extraction team members as defendants in this case. As such, they are not part of this case, and any allegations against them are not relevant to the present motion

### Conclusion

Based upon all of the foregoing, Plaintiff's Amended Complaint does not plausibly entitled him to relief, and the Defendants' Motion to Dismiss (Dkt. #27) is therefore GRANTED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: Rochester, New York
July 9, 2014

HON. FRANK P. GERACI, JR.
United States District Judge